The fourth district's appellate court of the state of Illinois has reconvened. The Honorable Thomas M. Harris presiding. All right, good morning, counsel. This is case number 4-24-1021, People v. Stiles-Stuckey. First, could we have appearances for the appellant? Amy Kemp. Thank you. And for the appellee? Allison Page Brooks, on behalf of the people. All right, thank you. Ms. Kemp, you may proceed with your argument. Amy Kemp Good morning. May it please the court, counsel. My name is Amy Kemp. I work at the Office of the State Appellate Defender, and I represent the appellant, Stiles-Stuckey. When our legislature provided that a defendant's history of prior delinquency or criminal activity may be a reason to impose a more severe sentence for his present offense, did it intend that his alleged misbehavior in an elementary school classroom would be reflected in the length of his prison term? Did it intend that double, even triple hearsay allegations of his misbehavior in school would be uniquely exempt from the most modest assurances of accuracy? This court should confront these questions today and answer, surely not. There are four reasons for this answer. First, to whatever extent school misbehavior is enough like criminal conduct to warrant its sentencing consideration and aggravation, Stuckey's report was not reliable evidence of the events described therein. Evidence of uncharged criminal conduct should be presented by witnesses who can be confronted and cross-examined rather than by hearsay allegations in a pre-sentence report. Mere allegations of prior criminal activity, such as a listing of prior arrests not resulting in convictions in a pre-sentence report, are not admissible at sentencing unless the state offers supporting testimony or some other further proof of the conduct alleged. Here the state presented no live witnesses, no affidavits, no police reports, no supporting evidence whatsoever. Moreover, double hearsay is admissible at sentencing if at least parts of the double hearsay have been corroborated by other evidence. Here we have double and beyond levels of hearsay with no corroboration. Stuckey's discipline report contains 351 entries, each with a date, time, category, and location within the school of the event described. But the author of the narrative description of the alleged misbehavior is never identified in the report. Most of the entries don't make clear how the author of the narrative has come by that information. So there's multiple levels of hearsay uncorroborated and beyond that we don't even know the identity of the people involved in that hearsay for most of the entries. Ms. Kemp, may I interrupt you for a moment? If you could just bookmark where you're at so you can get back to it. Hasn't this court already addressed this same issue in the Dillard case and people v. Dillard and people v. Walker? These infirmities that you're referring to, wouldn't they have been the same infirmities that would have been present in those two cases? And did those cases get it wrong? Yes. The case of Dillard directly addressed the issue of consideration of discipline report in aggravation. However, there is no real analysis in that case. It basically just cites to Ferguson for a substitute for analysis. And so the reasons that I've laid out, the four reasons to reject the result of the majority opinion in Ferguson are equally applicable to Dillard. There's no separate analysis on reliability in Dillard or in Ferguson for that matter. Only Justice McDade and her separate concurrence in part and dissent in part in Ferguson addresses this issue of reliability. And what about Walker? Walker is not a case that I am familiar with. The state didn't cite that case in its brief. And so I didn't have an opportunity to reply to that. To any extent this court finds Walker to be controlling here, I would ask for an opportunity to read and address it in supplemental briefing. It's just, it's simply, it's an unpublished decision, but 2023 decision and it's 2023 fourth 220737-U. But the same issue was raised in that issue. And this court indicated that it was not error for the trial court to consider the school discipline disciplinary records. To the extent that that was the holding of Walker, then I would submit that Walker was incorrectly decided. I think that this first reason of unreliability is especially compelling and it was not addressed in any type of thorough way in Ferguson or really at all in Dillard. The reason why reliability is so important here is the Supreme Court has said that though the usual rules of evidence are relaxed in sentencing, and we fully acknowledge that the evidence relied on at sentencing still has to be both relevant and reliable. And so to whatever extent that this court agrees with the majority opinion in Ferguson, that school misbehavior is enough like criminal conduct to make it relevant at sentencing. It seems that the state is trying to have it both ways in these cases where it says, look, the misbehavior in school is like uncharged criminal conduct, so it's relevant. But if it's like uncharged criminal conduct, then it has to be presented by live witnesses or have the kind of corroboration that is demanded by the cases that I've laid out in my briefing and touched upon here today. And that didn't happen here. So essentially, it can't go both ways. Either the school misbehavior is not relevant because it's not like any of the aggravating factors that our legislature has laid out, or if it is like or enough like criminal conduct, then it is certainly uncharged criminal conduct. Here there's no indication that anything Stuckey may have done in school ever led to even a referral to law enforcement for juvenile adjudication. And so it's even less than a listing of arrests or similar recounting of uncharged criminal conduct. And the case law is clear that when the state wants to rely on evidence of uncharged criminal conduct, it has to provide assurances of reliability and accuracy, mainly by presenting live witness. Some of the cases suggest that there may be some other ways to present evidence short of a live witness to support evidence of uncharged criminal conduct. That's hearsay in the PSI or its attachments. But here there was nothing there. There was no live witness. There was no documentary evidence to corroborate. There was just this report with its often vague entries, completely unattributed entries. Good morning. You began your argument today by talking about what the intent of or asking the about what the legislature may have intended with regard to these student disciplinary reports. But didn't the defendant waive any challenge whatsoever to our consideration of these, the student disciplinary report, when defendants counsel indicated when asked by the trial court that there were no additions, corrections or modifications to the PSI? Yes, I believe that sentencing counsel did waive the issue by failing to object, which is why the issue has been raised on appeal through the rubric of ineffective assistance of counsel. It was that that is how you believe we should be looking at the this issue is whether or not counsel was ineffective for failure to object. Is that right? Correct. Where the report where the report was so clearly irrelevant and unreliable, where Stuckey faced such a broad sentencing range and where all that remained for plea counsel to do at sentencing was to make his best efforts at getting his client a sentence that would not be a near maximum sentence like was imposed in this case. He had every reason to object to the report. He made no attempt to rely on anything in the report as evidence and mitigation, so it couldn't have been a strategic decision. Frankly, I think that all actors in your all actors in Peoria County have become habituated to this type of evidence being presented at sentencing and didn't consider whether it was meeting the requirements of reliability and relevance that our Supreme Court has demanded. So later, didn't after the sentencing, didn't the defendant challenge the trial court's consideration in an amended motion to reconsider the contents of this disciplinary report? Yes, on the second remand, new post plea counsel raised the issue of the disciplinary report and argued. So there really isn't another need for remand here, is there? I mean that the there have even though there may not have been strict compliance by counsel with 604D, but there was a full hearing on the merits. Was there not in this post plea motion for reconsideration? I believe that there was a hearing on the merits, yes. You may be referring to the Brown cases. Again, this isn't anything that the state addressed in its response, though I didn't address it in the reply. But primarily the relief that we're asking for here is not a remand for strict compliance with Rule 604D. The primary relief that's being requested here is that the sentence be vacated and remand for resentencing where the court cannot consider the report as aggravating evidence insofar as it remains irrelevant and unreliable. So full and fair hearing may under the Brown cases obviate the need for a third 604D remand and I acknowledge that. But the ineffective assistance of counsel remains and full and fair hearing does nothing to restore Stuckey's right to effective assistance of counsel at sentencing and in the post plea proceedings. And he was that right here. You're indicating that this is being brought under an ineffective assistance claim. I'm looking at the brief and the reply brief and it doesn't seem structured in that way. Can you point to where in your brief that you have laid out as the issue that counsel was ineffective? Well, it's very clearly laid out in the opening brief. The state didn't address on its merits at all my arguments on ineffective assistance of counsel. And so it may be that I didn't respond in my reply to an argument that was not made other than to point out that the state made no substantive response at all to ineffective assistance of counsel. But in my opening brief at pages. I apologize. I'm finding the exact reference to be clear. And counsel, if it's in there and I'm sorry, just it's been a while since I read the brief. If it's in your opening brief, I take it at your word on that. I just when I went back after you made the representation a few minutes ago, I wanted to find it here. And I'll look for it while you're proceeding with your arguments. It begins on page 28 of the opening brief, Justice Harris, and continues through page 34. Got it. Thank you. The structure of the brief, I address basically the merits of the discipline report issue before acknowledging waiver and then proceeding into an ineffective assistance analysis. Thank you. Yes. Counsel, if I may just briefly, I also note that in challenging the trial court's consideration of the school disciplinary records, if you will, you have provided some articles and reports that you reference, discuss racial disparities in school discipline. I guess I just want to confirm for the record, those were not presented at the trial court, correct? They're just being presented for the first time here on appeal? That's correct. So I cited to one law review article that was relied on by Justice McDade in her partial concurrence, partial dissent in Ferguson. That's a type of authority that is often relied on by reviewing courts for the first time on appeal. And I did collect cases on that, including our Supreme Court and this court. As to the other two authorities that are challenged by the state, both of those appear on governmental websites and therefore may be subject to judicial notice. I think it's particularly interesting when we look at the example of the Peoria City County Racial Disparities Report. I think it would be most peculiar to conclude that that disparities report is insufficiently reliable to be considered or take judicial notice of that report on appeal, where this is a report compiled by the very same school district that produced the discipline record that's at issue here. And so to suggest that the discipline report is reliable where it has all of these stacked hearsay, unattributed, the vague entries, but not the county's own acknowledgment of the extreme racial disparities at play in that exact school district, I think that would be a most peculiar outcome here. But even if this court would choose not to consider or place any weight on those three authorities, the briefing or the appellant is replete with primary authority that is unanswered by the state in support of these four reasons. Those reasons again being the reliability is not present here. Moreover, it's irrelevant because school misbehavior is not criminal conduct. It is not a juvenile adjudication. It is the breaking of rules, not the breaking of laws. And I've gone through the statistics on this report in some detail in the briefing. More than 88 percent of the entries in the report are for alleged misbehavior categorized as such things as cutting class or using bad language, even coming to class tardy or dress code violation. If I may just to follow up just briefly with regards to the court's ruling in this case. I guess when I look at the court's comments as a whole, while certainly there are reference to the school disciplinary report, it also appears to me, though, that the court placed more emphasis and a greater weight on the significant nature and circumstances of the offense and the defendant's behavior before the court and what the court determined to be the defendant's expressed lack of accountability. So how do you address that when we're looking at the entire context of the court's comments? Under the case law, reference to an improper aggravating factor does not have to be the only thing that the trial court considered. I would agree with you on your reading of the sentencing transcript that the court did consider other things, but that's not the question. The question is whether it was improper for the court to consider this as an aggravating factor, and indeed it was. We know that Judge Lyons did more than just refer to the report in passing. He certainly placed some weight on it, and that's very clear from the context of his comments at sentencing and at the hearing on the original motion to reconsider sentence. He emphasizes the report over and again. He uses it as evidence of who Stuckey is, and under, excuse me, the fourth reason against consideration of these reports as aggravating evidence, treating a child's misbehavior in school as evidence of who he is beyond, you know, what his family believes about him. The court scoffed at the mitigating evidence offered by Stuckey from his family and suggested that Stuckey must have fooled his mother and siblings into loving him and believing anything good about him because the discipline record was truly who he was. And so, counsel, you're, so just to understand, you're asking this court to overlook authority in the fourth district and third district that indicate that it is appropriate for a trial court to consider these disciplinary reports in sentencing and obviously determine what weight they should be given. I see that my time has expired. If I may briefly respond. You may. Yes, I am. Those cases were wrongly decided, and in particular, they do not address the first and I think most compelling reason for error in this case, which is the unreliability of the report. Thank you. Okay, thank you, Ms. Kepp. You'll have time in rebuttal. Ms. Brooks, you may proceed with your argument. Thank you, your honors. May it please the court and counsel. The defendant's opinion or argument here essentially raised for the first time on appeal is that his counsel was ineffective for failing or for stipulating to the admissibility of these educational reports that under existing authority at the time was admissible. And so, I don't understand how an attorney can be ineffective for stipulating to something that under existing law was admissible. And I understand what they're trying to do is get these cases over disavowed in this court. And to the extent they attempt to do that through the rubric of ineffective assistance of counsel, it essentially has to disregard the fact that you look at counsel's representation from where it's reasonable at the time. Excuse me here. Pardon me, your honors. So at the time, the representation was reasonable because it was supported by existing law, and therefore, it's not even a defect that would be cognizable under Rule 604D. So, the defendant's position here is that the failure to raise this issue of ineffective assistance of counsel constitutes a defect that had to be raised by the defense counsel below, and that the certificate which says that the defense counsel certifies that they made any amendments necessary for the adequate presentation of defects in the proceedings. To be affirmatively rebutted, excuse me, your honors. To be affirmatively rebutted, essentially, this would have to be a defect that has to be something that under the Curtis case, the defendant had to show some sort of desire to raise the claim. Because it's not a situation that anytime the defense omits a claim, therefore, this 604D certificate is automatically rebutted. And essentially, the defendant would always get a new 604D remand every time that the defendants can raise to any sort of issue that somehow counsel admitted to raise below. And that would automatically entitle them to a 604D remand. And the Curtis case shows that that's not the point. Curtis actually involved a claim of ineffective assistance of counsel that was not raised below. And in that case, they did not have a 604D remand that's being requested here. And of course, under the Ratliff case, Ratliff is the case that recently had clarified that 604D is a rule of waiver, not forfeiture, but waiver. And so why the defense here is attempting to not only raise a claim of ineffective assistance of counsel for the first time on appeal that was never presented below, but actually, instead of just getting a remand once a new sentencing hearing was a sentence vacated on a waived issue under 604D when waiver, essentially, this court has no supervisory authority that would permit it to disregard the waiver of an issue that was not raised below. So that's why the state doesn't respond to the merits of arguments that weren't raised below, because the 604D waiver is absolute for this, at least for this court, only the Supreme Court of Illinois has the supervisory authority that would be necessary to disregard it and rule on an issue on the merits. And that's why this court cannot even reach the merits of the issue. And really, the only proper issue their kind of claim is whether they're entitled to get another 604D remand for the reason that they believe that there's no 604D compliance. And their argument, then again, is that certificate has been refuted or rebutted by the record. A record of it shows that no defect, because under the Ferguson case, these reports were visible. And therefore, there's also nothing to show that that counsel acted erroneously by stipulating to the accuracy and make claims like, well, this is triple hearsay and unattributed, but defense racial disparities, for example. But there's nothing itself about these particular events that shows that defense attorney would have had specific reason in certain instances to dispute the accuracy of any of the records. So if defense attorney says that this is accurate, then there's no record basis to dispute that. Then why can they claim ineffective assistance of counsel for saying that counsel had every reason to object to the accuracy of the records or the admissibility of the records? And they also make the claims here about whether educational records are relevant or not for purposes of sentencing hearing. Well, educational records are included in the pre-sentence investigation report under statute 5-3-1A. And so they also believe that somehow this has to be akin to a statutory aggravating factor, like it has to be akin to delinquency or a crime in order to be relevant. Well, things like your family, how many children you have, whether you had them out of wedlock, whether you're supporting them, whether you're employed or not. Those are proper considerations at a sentencing hearing because we're supposed to look at the defendant and a lot of things about them in order to determine the proper sentence. And it doesn't have to be an aggravating factor for education to be, quote, relevant to the sentencing hearing because it is made relevant, because it's included in the PSI, because it has to be included in the PSI by statute. And so the defendant's disciplinary... Excuse me. I heard counsel this morning talk about reliability and that we should take a closer look at whether these types of records really are reliable and whether a trial court should be looking at the behavior of a juvenile in fourth grade, let's say, when that person is being sentenced as an adult. And so can you address the issue of reliability? I'm sorry. Is your question about the relevance or the reliability? Not relevance. That's why I asked the questions. You're talking about relevance. Counsel talked about reliability and that these types of records really, and asks us to not follow the authority that was in effect and is in effect, Ferguson and the other cases, because they were wrongly decided because these types of records per counsel are not reliable. I mean, how is a discipline report from fourth grade reliable? A reliable as far as facts or piece of evidence in terms of a child's behavior that would pertain to what type of sentence that child as an adult should be given? Well, the defense has an opportunity to challenge the reliability and they chose not to. But even without respect to the stipulation to the reliability that existed in this case, if your question is generally about any other case, I mean, what they're proposing here is that teachers and everybody, lunch monitors, everybody has to be called into court to testify to the accuracy of the records. I'm not sure that every single teacher or anybody who had contact with a defendant throughout potentially many different school districts over many different years of schooling has to be brought in to testify as to like grades or everything that's in those educational records. The reason they say that this sort of has to be presented by evidence is because they believe it's akin to criminal conduct and that uncharged criminal conduct, that there's a rule that says that that has to be presented essentially through testimony, not just included in the PSI. But we're dealing not here with crimes, but we're dealing with things like grades and other things, but also rule violations and rule violations, as the defense even say now, is not a crime. So it's not even delinquency if you are tardy to school necessarily like a dress code, I think is what they're saying. You're talking back to a teacher. I mean, these are not things that would be petitioned to juvenile court. So why those have to be presented as akin to crimes or delinquency? It just seems like that would be more akin to like what grade the defendant got in a particular class, and that does not need to be established with testimony from every teacher the defendant ever had. That's why these sort of records, unless there's a reason for the defense attorney to say that, no, my client didn't strike a teacher or my clients didn't do this or that, then they could make that objection. And then if that needs to be litigated further, then that can be had. But essentially, if you just simply stipulate that everything in the report is accurate, then it seems like what else is a trial court to do, but to accept it for what it is and move on. Well, Ms. Brooks, what about then the issue of relevancy? And is there a point at which the trial court does commit error by giving weight to school disciplinary records given the passage of time? Let's say instead of a 19-year-old, such as we're dealing with here, we're talking about a 50-year-old defendant. And now you have decades separating the 50-year-old's criminal actions from the school discipline that's reflected in the PSI. Is there a point where a trial court's consideration of the school disciplinary records is error because it's stale? It doesn't have probative value because too much time has passed? Perhaps, but the standard would be abuse of discretion. And that's with a high measure of deference to the court. But the standard of abuse of discretion, if something is so unreasonable to the degree that no reasonable person would agree with what the trial court did, then if somebody talks back to a teacher in first grade and now they're being sentenced for burglary as a 50-year-old, most people would say that's unreasonable. So therefore, I think that would be just under the standard of abuse of discretion. It would be so unreasonable to the degree that no reasonable person thinks that your sentence should be enhanced as a 50-year-old burglary defendant because you talked back to your teacher in first grade. That seems like everyone would agree that that's unreasonable. And therefore, that would be, to aggravate a sentence based on that particular allegation, that seems would be just within the standard of abuse of discretion review. Does that answer your question? So taking what you just said, can you analyze this case? Well, there may be things in there that I think that go back further to like kindergarten or first grade or something. Those should not really have the same amount of weight or any weight at all necessarily. But I'm not sure if the trial court here was assigning specific weight to certain things that are very stale versus the overall picture of if a defendant has like a inferences that that defendant didn't receive a very good education. And therefore, that affects their ability to be rehabilitated into becoming a proper productive citizen because they didn't receive a proper education because of their disciplinary problems. I mean, so it is relevant for a court to consider an accumulative, essentially the entire disciplinary record, even if it goes back to very early years, because I think that reflects on the defendant's ability to follow rules, like society is full of rules, even if they're not crimes. And just to become a productive citizen, because you can't follow rules, it's going to be hard to hold a job. So I mean, that gets again to the prospects of being rehabilitated into a productive citizen. If you can't follow rules, you're not going to be able to hold a job and you're not going to be a contributing member of society and you might fall back into crime. And so these things can be permissible for the trial court to analyze without considering it like talking back to a teacher is akin to criminal activity, which it's not. And that's not the state's position. This is just relevant to the topic of the defendant's education. And that's what something that the trial court must consider as part of the PSI by statute. So see if there's anything I needed to say as well. I think that was the extent of my argument. So I would entertain any other questions. If not, I would thank you and request this court to affirm. Right. I don't see any other questions. Thank you. Ms. Kemp, rebuttal argument. Thank you. At the outset, I would note that Ms. Brooks's argument today on sentencing counsel, Morris's deficient performance is forfeited because it was not included in her response brief and the state's response brief. But responding to the merits of that argument anyway, Morris's deficiency can be seen because not only did Ferguson exist at the time of sentencing, but this whole line of cases on reliability existed. And so even though there was this extent non-controlling out-of-district authority in the majority opinion in Ferguson, there was also a long line of cases requiring sentencing evidence to be both relevant and reliable. And the report was so clearly irrelevant and unreliable here that it was deficient performance to not take note of, especially given the partial dissent and concurrence in Ferguson, to not make some effort at keeping that report out or at least minimizing its consideration. And I would refer the court to page 17 of my opening brief for a more thorough discussion of that line of authority that, separate and apart from Ferguson, Mr. Morris should have been aware of at sentencing and should have used as a basis for objection to the inclusion of the discipline report in the PSI. The state here backs away from the notion that school misbehavior is akin to criminal conduct, but that was the reasoning of the Ferguson majority. That was why Ferguson majority concluded that these reports are relevant. And so, again, it's kind of trying to have it both ways to rely on Ferguson as authority on this and yet reject the reasoning of the court, which is that school misbehavior is akin to delinquency, and that's why it's relevant. The state has also suggested that the requirement of reliability is limited to uncharged criminal conduct, but that's not so. Again, looking at the authority on page 17 of the opening brief, is this particular requirement for live witness in cases where the state wants to rely on evidence of uncharged criminal conduct, but the requirement of reliability applies to any sentencing evidence. And here, if you look at the particulars of the report, even if you don't treat the report as akin to criminal conduct or the incidents described in the report as akin to criminal conduct, the entries are still so unreliable because of the stacked hearsay, the unattributed assertions are not even identified in many cases, the lack of detail. Sometimes the reports originate from students. And so, that requirement of reliability remains regardless of whether the report is viewed as relevant because it describes conduct akin to delinquency or not. The report still needs to be reliable to be relied upon as aggravating evidence, and it is not reliable. I've gone through the statistics in my briefing. I've pointed to many examples in my briefing, but I would invite this court to just open to any page of the discipline report and look at the entries that we're talking about here. The requirement of reliability is so clearly flouted by any reliance on this report. As to the state's arguments regarding waiver of ineffective assistance of counsel, it's well established that ineffective assistance of counsel claims can be raised for the first time on appeal. I've replied to that argument thoroughly in my reply brief, and I would respectfully refer the court to that brief in the interest of time rather than repeating my reply. But these arguments are not waived. Ineffective assistance of counsel, even invited error, can be raised as ineffective assistance of counsel for the first time on appeal, and that's what we've done here. Finally, the state suggests a kind of slippery slope argument that any time any claim is omitted from briefing, excuse me, from a post plea motion that we're going to end up with these ineffective assistance claims and another bite at the apple. If I may briefly conclude, you may. That is not so because the deficiency has to be matched with prejudice there from basically the claim has to be shown to be meritorious, and that's what I've done here. Thank you. All right. Thank you. Thank you both. The court will take the matter under advisement and issue a written decision.